**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**ROBERT P. TAYLOR,**

      **Plaintiff,**

**vs.**                                       **Case No. 4:14cv98-MW/CAS**

**JAMES SIKES,**

      **Defendant.**

_____/


**<u>SECOND REPORT AND RECOMMENDATION</u>**[1]

After the pro se Plaintiff's second amended civil rights complaint

[hereinafter "complaint"], ECF No. 11, was dismissed as to all Defendants

except Defendant Sikes, the parties engaged in a period of discovery. ECF

No. 23. Defendant Sikes then filed a motion for summary judgment, ECF

No. 30, supplemented by an additional exhibit, ECF No. 31. Plaintiff also

filed his own motion for summary judgment, ECF No. 34, with two pages of

exhibits. The parties were advised of their obligation to respond to the

---

[1] The first Report and Recommendation, ECF No. 21, was entered on
Defendants' motion to dismiss, ECF No. 17. That recommendation was granted, ECF
No. 22, and Plaintiff's second amended complaint, ECF No. 11, was dismissed as to all
claims except Plaintiff's claim against Defendant Sikes for retaliation on March 2, 2013.

opposing party's motion, ECF No. 36, and both parties filed responses.

ECF Nos. 35, 37.  The motions are ready for a ruling.

## Allegations of the Complaint, ECF No. 11

Plaintiff's claims are based on events at Liberty Correctional

Institution beginning in 2013.  Plaintiff contends that on January 24th and

February 27th, he was "rushed" out of the dining hall in less than seven

minutes, without sufficient time to eat his meal.  ECF No. 11 at 4.  Plaintiff's

grievances concerning that "practice" were denied by Defendant Sikes, and

other officials.  Plaintiff contends that after Defendant Sikes denied his

grievances, he retaliated against him.  As relevant to the surviving claim,

Plaintiff alleged that on March 2, 2013, Defendant Sikes yelled at Plaintiff in

front of the whole dormitory for writing a grievance against him.  Defendant

Sikes then sent Plaintiff back to the dormitory, not allowing Plaintiff to eat

breakfast.

## Legal standards governing a motion for summary judgment

"The court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus,

summary judgment is proper "after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must then show[2] though affidavits or other Rule 56 evidence "that there is a genuine issue for trial" or "an absence of evidence to support the nonmoving party's case."  Id. at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th

---

[2] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Cir. 2004) (citations omitted).  Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (noting that a "scintilla of evidence" is not enough to refer the matter to a jury).  The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law." <u>Hickson Corp.</u>, 357 F.3d at 1260 (quoting

<u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L.

Ed. 2d 202 (1986)).  All "justifiable inferences" must be resolved in the light

most favorable to the nonmoving party, <u>Beard</u>, 548 U.S. at 529, 126 S. Ct.

at 2578 (noting the distinction "between evidence of disputed facts and

disputed matters of professional judgment."),[3] but "only if there is a

'genuine' dispute as to those facts." <u>Scott v. Harris</u>, 550 U.S. 372, 380, 127

S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in <u>Ricci v. DeStefano</u>, 557

U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)).  "Where

the record taken as a whole could not lead a rational trier of fact to find for

the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec.</u>

<u>Indus. Co.</u>, 475 U.S. at 587, 106 S. Ct. at 1356 (other citation omitted).

**The relevant Rule 56(e) evidence**

Defendant Sikes was employed by the Department of Corrections in

2013, had earned the rank of Captain, and was assigned to Liberty

Correctional Institution.  ECF No. 30, Ex. B (Sikes Declaration, ECF No.

---

[3] Noting that deference must be given "to the professional judgment of prison administrators," the Court stated that "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." <u>Beard</u>, 548 U.S. at 530, 126 S. Ct. at 2578 (citing <u>Overton v. Bazzetta</u>, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003)).

30-2).[4]  Defendant Sikes explains in his Declaration that inmate phone calls

"are recorded and monitored."  Ex. B at 1.  At one point, Plaintiff

telephoned his girlfriend and told her during their conversation that

Defendant Sikes "might send him to confinement."  *Id.*  Plaintiff also told

her "that it was known" that Defendant Sikes "sent inmates to confinement,

and they are never heard from again."  *Id.* at 2.  Plaintiff said that "if she did

not hear from him to start calling people."  *Id.*

On March 2, 2013, Defendant Sikes "was standing outside of H2

dormitory where [Plaintiff] was housed.  *Id.*  The inmates has been

released from the dormitory "to be escorted to the morning meal."  *Id.*

Defendant Sikes saw Plaintiff standing in line and called him "away from

the line" to speak with him.  *Id.*  Defendant Sikes reminded Plaintiff "that the

phone calls are monitored and began talking with him concerning the

conversation he had with his girlfriend."  *Id.*  Defendant Sikes states that

Plaintiff "became furious that [Defendant Sikes] had listened to his phone

call but held his composure."  *Id.*  Defendant Sikes discussed Plaintiff's

statement to his girlfriend about being placed "in confinement and never

---

[4] Plaintiff contends Defendant's Declaration is unsworn.  ECF No. 37 at 2.
Defendant Sikes, however, declared under penalties of perjury that the facts stated in
the declaration are true and correct.  ECF No. 30-2 at 2.

being heard from again." *Id.* He suggested that Plaintiff "call his girlfriend and explain to her that he would not disappear." *Id.*

After Defendant Sikes finished speaking with Plaintiff, Plaintiff asked Defendant Sikes if he could return to his dormitory. ECF No. 30, Ex. B at 2. Defendant Sikes allowed him to do so, explaining that inmates "cannot be sent back to the dorm and be refused a meal for punishment." *Id.* Inmates can, however, "request to return to the dorm without eating." *Id.* Defendant Sikes denies yelling at Plaintiff at any time, and declares that he "did not send" Plaintiff back to the dorm. *Id.*

Plaintiff submitted a copy of his informal grievance[5] which he submitted to the warden on March 2, 2013. ECF No. 34 at 4. Plaintiff said that at approximately 6 a.m., Defendant Sikes "chewed" him out for writing grievances and then sent him back to his dormitory, denying him breakfast. *Id.* Plaintiff said he was diabetic and it was dangerous and bad for his health to skip meals. *Id.* The response to Plaintiff's grievance, dated March 4, 2013, indicated the complaint would be forwarded for review and was approved. *Id.*

_____

[5] An informal grievance may be considered as evidence, but statements made within a grievance are not sworn testimony. The second grievance, dated June 2014, is not related to the event at issue in this case and is not relevant. ECF No. 34 at 5. Additionally, Plaintiff's arguments as to the events in question, *see* ECF No. 37 at 4-6, are not evidence either.

In response to Defendant's summary judgment motion, Plaintiff also submitted the affidavit of inmate Lorenza Session.  ECF No. 37 at 20-22. Inmate Session states that he was at Liberty Correctional Institution on March 2, 2013, and was in line with approximately 50 other inmates. Inmate Session observed the "verbal confrontation" between Plaintiff and Defendant Sikes which he generally declares was "over [Plaintiff] writing up [Defendant] Sikes and making calls." *Id.* at 20.  Inmate Session states that after their "confrontation," Defendant "Sikes refused to allow" Plaintiff to eat breakfast, "even after [Plaintiff] told [Defendant] Sikes he was diabetic and needed to eat breakfast." *Id.*  Inmate Session further declared that Defendant Sikes "yelled" at Plaintiff that "if he did not stop he would lock him up." *Id.* at 21.

**Analysis**

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech."  Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (quoted in Burns v. Warden, USP Beaumont, 482 F. App'x 414, 416 (11th Cir. 2012)); *see also* O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (quoted in Malloy v. Peters, 617 F. App'x 948, 950 (11th Cir. 2015), *cert. dismissed*, No. 15-8914, 2016 WL 1450456 (June 13, 2016)).  "It is an established principle of constitutional law that an

inmate is considered to be exercising his First Amendment right of freedom

of speech when he complains to the prison's administrators about the

conditions of his confinement." Smith v. Mosley, 532 F.3d 1270, 1276

(11th Cir. 2008) (citing Farrow, 320 F.3d at 1248).  An inmate may maintain

a cause of action for retaliation under 42 U.S.C. § 1983 by showing that a

prison official's retaliatory action was "the result of [the inmate's] having

filed a grievance concerning the conditions of his imprisonment." Farrow,

320 F.3d at 1248 (quotation marks omitted and emphasis added).  In this

case, it is undisputed that Plaintiff had filed grievances.  *See* exhibits to

ECF No. 17 (motion to dismiss).

However, to prevail on a retaliation claim, an inmate must establish

three elements: "(1) his speech was constitutionally protected; (2) the

inmate suffered adverse action such that the [official's] allegedly retaliatory

conduct would likely deter a person of ordinary firmness from engaging in

such speech; and (3) there is a causal relationship between the retaliatory

action [the disciplinary punishment] and the protected speech [the

grievance]." Mosley, 532 F.3d at 1276.  "[A] prisoner need not allege the

violation of an additional separate and distinct constitutional right; instead,

the core of the claim is that the prisoner is being retaliated against for

exercising his right to free speech." O'Bryant, 637 F.3d at 1212 (quoting

Farrow, 320 F.3d at 1248).  "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of his First Amendment rights." Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005).

Although the first element of this claim is undisputed (that Plaintiff filed grievances and, thus, engaged in protected speech), the parties disagree on the other two elements.  Defendant Sikes has submitted evidence demonstrating that regardless of whether or not Plaintiff had filed grievances, that consideration was not relevant to his conversation with Plaintiff because their conversation concerned Plaintiff's statements on the telephone to his girlfriend.  Defendant Sikes provided evidence that he took Plaintiff aside, did not yell at Plaintiff, much less do so in front of others, and that he did not subject Plaintiff to any punishment or adverse action. Defendant Sikes has shown that Plaintiff requested to return to his dormitory without eating, arguing that he did so because he was upset and not because Defendant Sikes prevented Plaintiff from eating breakfast. Thus, Defendant Sikes disputes that Plaintiff suffered an adverse action and contends there is no causal connection.

Plaintiff's version of events is considerably different.  The affidavit from inmate Session presents evidence that the "verbal confrontation"

between Plaintiff and Defendant Sikes was not just about the monitored telephone call, but also concerned Plaintiff's having written a grievance on Defendant Sikes.  Inmate Session's affidavit presents evidence that Defendant Sikes refused to permit Plaintiff to eat breakfast, an adverse action, at the same time Plaintiff was informing Defendant Sikes that he needed to eat breakfast because he is diabetic.  The final statement in inmate Session's affidavit,  that Defendant Sikes "yelled" at Plaintiff that "if he did not stop he would lock him up," is ambivalent.  It could mean that if Plaintiff did not stop some objectionable behavior or attitude displayed in that conversation, he would be locked up.  Alternatively, it could also mean that if Plaintiff did not stop writing grievances, he would be locked up.

Because all "justifiable inferences" must be resolved in the light most favorable to Plaintiff as the nonmoving party, the inference from this affidavit is that Defendant Sikes punished Plaintiff by not allowing him to eat breakfast because of verbal comments made to Plaintiff's girlfriend during the telephone call,[6] grievances submitted, or both.  It is also a

---

[6] Beyond Plaintiff's protected First Amendment right to file grievances, he also has a protected First Amendment right to communicate with individuals outside the prison.  Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) (stating that prison officials "may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements."); McNamara v. Moody, 606 F.2d 621, 623 (5th Cir. 1979) (holding that suppression of prisoner's letter was a violation of the First Amendment); see also Loggins v. Delo, 999 F.2d 364, 367 (8th Cir. 1993) (concluding that prison officials could not punish prisoner for offensive

justifiable inference that Defendant Sikes threatened Plaintiff to stop writing grievances or be sent to confinement.  Accordingly, there is a genuine dispute of material fact concerning whether Plaintiff suffered adverse action and whether there was a causal relationship.

To the degree Defendant Sikes has argued that Plaintiff fails "to indicate what, if any deterrence this act had on the exercise of his First Amendment rights, *see* ECF No. 30 at 9, that argument is incorrect.  The standard is whether a "defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of his First Amendment rights."  423 F.3d at 1254.  "[A] plaintiff need not show that his own exercise of First Amendment rights have been chilled, but instead a plaintiff can establish an injury if he can show that the retaliatory acts are sufficiently adverse that a jury could find that the acts would chill a person of ordinary firmness from exercising his First Amendment rights."  Pittman v. Tucker, 213 F. App'x 867, 870 (11th Cir. 2007) (citing Bennett, 423 F.3d at 1254-55).  "First Amendment retaliation is actionable because 'it threatens to inhibit exercise of the protected right.'"  Bethel v. Town of

---

language in a letter to his brother without violating the First Amendment); Brooks v. Andolina, 826 F.2d 1266, 1268 (3rd Cir. 1987) (holding that prison officials violated the First Amendment by disciplining inmate for comments made in a letter about a correctional officer).

Loxley, 221 F. App'x 812, 813 (11th Cir. 2006) (citing Bennett, 423 F.3d at 1253).

If Plaintiff's evidence is believed, a jury could find that the act of denying a prisoner a meal and threatening him with further disciplinary actions such as confinement would chill a person of ordinary firmness from exercising his First Amendment rights.  There is a genuine dispute of material fact on these issues and Defendant Sikes' motion for summary judgment should be denied.  In light of the dispute of material fact, Plaintiff's motion for summary judgment should be denied as well.

**Qualified Immunity**

Defendant Sikes has raised qualified immunity as a defense.  ECF No. 30 at 10-11.  "Qualified immunity shields government officials from civil liability when: (1) the government official was acting within the scope of his discretionary authority; and (2) the official's conduct does not "violate clearly established statutory or constitutional rights."  Helm v. Liem, 523 F. App'x 643, 645 (11th Cir. 2013) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1329 (11th Cir. 2007) (quotation omitted)).  It has been clearly established for many years that a prison official cannot retaliate against an inmate for filing grievances or complaining about the conditions of his confinement.  Defendant Sikes is not entitled to qualified immunity.

**RECOMMENDATION**

It is respectfully **RECOMMENDED** that both Defendant's motion for summary judgment, ECF No. 30, and Plaintiff's motion for summary judgment, ECF No. 34, be **DENIED** because there is a genuine dispute of material fact.  It is further **RECOMMENDED** that this case be **REMANDED** for further proceedings prior to setting this case for trial.

**IN CHAMBERS** at Tallahassee, Florida, on August 3, 2016.


 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS
UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>
**Specific, written objections to these proposed findings and recommendations must be filed within 14 days after being served with a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  A copy of the objections shall be served upon all other parties.  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. Rule 3-1; 28 U.S.C. § 636.  A party may respond to another party's objections within 14 days after being served with a copy thereof.**